1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                    AT SEATTLE

10

11  STATE OF WASHINGTON
    DEPARTMENT OF TRANSPORTATION,
12                                              No.  C03-166Z
                   Plaintiff,
13
    v.                                          OPINION
14
    SEA COAST TOWING INC., a Washington
15  corporation, d/b/a SEA COAST TOWING
    OF SEATTLE, MYRON B. KJOS and JANE
16  DOE KJOS, individually and as husband and
    wife,
17
                   Defendants.
18

19          This matter comes before the Court on remand from the Ninth Circuit Court of

20  Appeals by Memorandum of September 6, 2005, Case No. 04-35469.  Mandate of USCA,

21  docket no. 131.  After reviewing the parties' briefs in support of, and opposition to, the

22  application of the Limitation on Liability Act, 46 U.S.C. app. § 183 (1952 & Supp. 2005),

23  and hearing the argument of counsel on January 27, 2006, the Court enters the following

24  Order.

25

26

ORDER   -1-

1   ## BACKGROUND

2       Plaintiff Washington State Department of Transportation (the "State") brought this

3   action to recover damages resulting from a vessel allision.  In the early hours of July 29,

4   2000, a tugboat operated by Defendant Sea Coast Towing, Inc. ("Sea Coast") was pushing a

5   barge on Lake Washington when the barge struck and damaged a piling supporting the State

6   Route 520 bridge ("520 bridge").  Finding of Fact ("FOF") 9, docket no. 98.  The State

7   owns, operates and maintains the 520 bridge.  Id. at 8.  The State brought claims against Sea

8   Coast in this Court for negligence, gross negligence, and trespass.  Docket no. 1.  The case

9   concluded with a bench trial in which the principal issues were whether the captain of the

10  vessel, Myron Kjos, was negligent in falling asleep at the helm and whether Captain Kjos

11  was negligent in violating regulations prohibiting individuals from working more than 12

12  hours in a 24-hour period.  See 46 U.S.C. § 8104(h); 46 C.F.R. § 15.705(d); Conclusions of

13  Law ("COL"), docket no. 98.

14      After trial, the Court concluded that Captain Kjos was negligent in maintaining a

15  proper watch, which violated Rule 5 of the International Regulations for Prevention of

16  Collisions at Sea, 33 U.S.C. § 1602.  COL 8.  The Court further concluded that Captain

17  Kjos' negligence in failing to maintain a proper lookout was the sole proximate cause of the

18  allision.  COL 10.  Under the Limitation of Liability Act, 46 U.S.C. App. § 183, the Court

19  then shifted the burden to Sea Coast to demonstrate that it had no privity of actual or

20  constructive knowledge as to the cause of the allision.  COL 9-10.  Examining the relevant

21  case law, the Court concluded that Sea Coast did not have knowledge of Captain Kjos'

22  failure to maintain a proper lookout because Sea Coast demonstrated that Captain Kjos was

23  competent.  COL 12-14.  Thus, Sea Coast was entitled to limit its liability for the allision to

24  the value of the vessel ($105,000).

25      The Court found that the State did not prove by a preponderance of the evidence that

26  Captain Kjos violated the 12-hour limitation.  FOF 27.  The Court relied on the testimony of

1  Captain Kjos and the vessel work logs, which it found were poorly kept.  FOF 28.  While the

2  Court concluded that Sea Coast was negligent in issuing a company policy at odds with the

3  12-hour work limitation and failing to adequately maintain its logs, the Court also concluded

4  that the State failed to prove that this negligence was a proximate cause of the allision.  COL

5  11.  Because there was no 12-hour violation, the burden did not shift to Sea Coast to show

6  that it lacked knowledge of such a 12-hour violation.  COL 11-12.

7       On September 6, 2005, the Ninth Circuit entered a Memorandum remanding the case

8  back to this Court to further address the 12-hour work limitation.  Docket no. 137-3.  Citing

9  several of the same cases relied upon by this Court in its Conclusions of Law, the Ninth

10  Circuit's Memorandum appears to adopt the same underlying principles of burden shifting

11  under the Limitation of Liability Act.  Mem. at 2-3.  However, the Ninth Circuit held that

12  this Court erred in applying the burden shifting at trial.

13  ## DISCUSSION

14       The Ninth Circuit's Memorandum first acknowledges the general rule that a claimant

15  has the burden of establishing the specific negligent act that caused the harm before the

16  burden shifts to the defendant under the Limitation of Liability Act.  Id. (citing In re Bowfin

17  M/V, 339 F.3d 1137, 1138 (9th Cir. 2003)).  The Memorandum also noted that the reason for

18  placing the initial burden on the claimant is to prevent the defendant from being forced into

19  speculating as to which of many potential causes it must rebut after the burden shifts.

20  Finally, stating that "the only disputed factual contention...was the *possibility* that [Captain

21  Kjos] had worked in excess of 12 hours," the Ninth Circuit reasoned that the burden shifts to

22  Sea Coast because Sea Coast was not required to speculate as to the alleged negligence.  Id.

23  at 4 (emphasis added).  The Memorandum concluded: "[T]he only disputed factual

24  contention was whether Sea Coast was neither privy to nor had knowledge of any violation

25  by Kjos of the 12-hour work limitation.  Sea Coast was not entitled to limit its liability

26  without first satisfying *this burden of proof*."  Id. at 6 (emphasis added).  Thus, as this Court

ORDER  -3-

1  interprets the Memorandum, the reference to "this burden of proof" appears to require Sea

2  Coast to prove by a preponderance of the evidence (1) that no 12-hour violation occurred in

3  the 24 hours preceding the allision and (2), if Sea Coast cannot make such a showing, that it

4  lacked privity of knowledge of a 12-hour violation.[1]

5        Sea Coast contends that the same evidence supporting the Court's finding that the

6  State could not establish the existence of a 12-hour violation (FOF 28) is sufficient to prove

7  that, in fact, no 12-hour violation occurred.  Specifically, Sea Coast relies on the testimony

8  of Captain Kjos and his reliance on the daily log entries for July 28 and 29 to aid in his

9  memory of the events.  In response, the State argues that Captain Kjos' testimony was

10  contradicted by his deposition testimony, not supported by an analysis of the handwriting on

11  the log entries, and unhelpful based on his lack of certainty concerning the days preceding

12  the day of the allision.  The State also argues that the 12-hour violation is not the only issue

13  before the Court on remand.  The State requests that the Court consider whether Sea Coast's

14  policies and safety procedures were themselves a cause of Captain Kjos falling asleep at the

15  helm, regardless of a 12-hour violation.

16        1.  Violation of the 12-Hour Limitation

17        The Court determined that, as a factual matter, the State could not prove by a

18  preponderance of the evidence that Captain Kjos violated the 12-hour limitation.  FOF 28.

19  The question now is whether the Court should reach the same result given the shift in burden

20  from the State to Sea Coast.  Sea Coast argues that the same evidence the Court used to find

21  that the State could not establish the existence of a 12-hour violation is sufficient for Sea

---

[1] Logically, this new burden shifting scheme appears difficult to apply; if Sea Coast failed to prove the *absence* of a 12-hour violation, such a failure would not establish that a violation actually occurred.  Thus, under the second prong of the analysis, Sea Coast could be required to prove that it lacked privity of knowledge as to an event that may or may not have occurred.  Presumably, this is why courts have traditionally required claimants to first prove the existence of the negligent act before the burden shifts to the defendant to establish a lack of privity of knowledge as to that act.  Nonetheless, the Court need not address this problematic aspect of the issue on remand because, as discussed below, Sea Coast has established the absence of a violation based on the evidence before the Court.

ORDER   -4-

Coast to establish the absence of a 12-hour violation.  Sea Coast relies primarily on the testimony of Captain Kjos and the work logs of the vessel for the 24 hours preceding the allision.  At trial, Captain Kjos stated explicitly that he did not work more than 12 hours in the 24-hour period prior to the allision:

> THE COURT: Can you tell us in the 24-hour period prior to the accident here that we're involved with were you on watch more than 12 hours in that 24-hour period, sir?
>
> KJOS: No.
>
> . . .
>
> KJOS: No.  He asked me that if I – in the previous 24 hours before my accident if I was on watch more than 12 hours, and I said no.

Bitseff Decl., docket no. 136, Ex. A (Kjos Testimony at 38).

Furthermore, Captain Kjos was questioned at trial about the critical period in dispute from Vashon Head at 0745 to Point Defiance at 0935.  As the Court previously found, if Captain Kjos worked during this period, he worked approximately 12.45 to 12.95 hours but, if he did not work during this period, he worked only 10.65 to 11.15 hours.  FOF 28.  At trial, Captain Kjos was asked directly whether he worked during this time period and responded as follows:

> QUESTION: 0935 the next entry was Point Defiance...Would you have been on watch *between* Point Vashon and Point Defiance?
>
> KJOS: No.

Id. (Kjos Testimony at 92) (emphasis added).

The State contends that this testimony was contradicted by Captain Kjos' deposition testimony, in which the following exchange took place:

> SLOAN: The next entry is 0745, 7:45 in the morning, of July 28, 2000.  It appears to read "Vashon...Head."  Was that your entry?
>
> KJOS: It was.
>
> SLOAN: And were you on watch then?
>
> KJOS: I don't know.

ORDER   -5-

Docket no. 137, Ex. 7 (Kjos Dep. at 53-54).  The State's reliance on the deposition testimony

is misplaced.  Captain Kjos' uncertain deposition testimony refers only to a specific point in

time (0745), while his trial testimony speaks to the entire period in dispute (0745 to 0935).

There is no contradiction.

Next, the State argues that Captain Kjos lacked credibility because his testimony that

one or more of the daily log entries were not his is contradicted by an analysis of the

handwriting.  The State invites the Court to analyze the handwriting on the daily log for July

28, 2000, and find that the entries for 1120, 1310, and 1540 are in the hand of Captain Kjos.

The three entries occurred during a time when Captain Kjos testified that he was off-watch.

While the State makes a compelling argument based on the plain appearance of the

handwriting, the Court declines to place itself in the position of serving as a handwriting

expert.  Moreover, the testimony at trial was clear in indicating that log entries were not

necessarily made by the individual on watch at the time.  Thus, even if the State were correct

about the handwriting, it would show only that Captain Kjos was mistaken in testifying that

the handwriting was not his.[2]

Finally, the State relies on several exchanges at trial in which Captain Kjos used the

word "conjecture" with regard to estimating the number of hours he worked based on the

daily logs:

> THE COURT: Is there any way from looking at [the master log] itself to know exactly
> when you worked and when you didn't [on *July 24th*]?
>
> KJOS: No, because it isn't – I'm not – where it says – I could put my initials in over
> here, each time these points were logged, there's nobody – nobody's logged any

---

[2] In FOF 28, the Court stated that "[t]he log entries for both 0745 and 0935 (Exhibit 48) on July 29 were in the handwriting of the mate."  The parties agree that Captain Kjos testified that the log entry for 0745 on July 28, 2000, was in his own handwriting, not that of the mate. Given this clarification, the Court takes this opportunity to amend FOF 28.  The Court finds that the log entry for 0935 on July 28, 2000, was in the handwriting of the mate and, per his testimony, the entry for 0745 was in the handwriting of Captain Kjos.  This finding does not alter the Court's analysis of the legal issues on remand.

1    points they went by or anything.  There's no way to prove.  It would be just
2    conjecture on my part or anybody else's.
                . . .

3    SLOAN: Bringing your attention to the master's daily report for *July 25th* of 2000?

4    KJOS: I couldn't tell you.  I could try to tell you, but it would be conjecture on my
5    part.
                . . .

6    SLOAN: So from looking at the master's daily report for *July 26*, do you have a way
     of calculating the number of hours you worked?

7    KJOS: I could go through it and try for you, but I – I'm pretty – it would be
8    conjecture on my part.

9    Docket no. 137, Ex. 1 (Kjos Testimony at 23-25) (emphasis added).  The State maintains that

10   these exchanges demonstrate that Captain Kjos was largely uncertain about the number of

11   hours he worked and, therefore, not a credible witness.

12          The Court declines to give weight to these exchanges in evaluating Captain Kjos'

13   testimony regarding the 24 hours immediately preceding the allision.  Each of the questions

14   refer to days (July 24, 25, and 26) before the 24 hours preceding the allision (July 28-29),

15   and none of Captain Kjos' answers involved the careful evaluation of the daily logs he

16   undertook for July 28-29.  Accordingly, the Court finds these exchanges irrelevant to the

17   question of whether Captain Kjos violated the 12-hour limitation in the 24 hours preceding

18   the allision.

19          In sum, the evidence regarding the 12-hour issue is minimal and one-sided.  At trial,

20   Captain Kjos offered direct and specific testimony that he was not on watch during the

21   critical period from 0745 to 0935 on July 28, 2000, and that he did not work more than 12

22   hours in the 24 hours preceding the allision.  This testimony is not contradicted by Captain

23   Kjos' deposition, the daily logs, or any other meaningful source.[3]  Accordingly, the Court

24

25   _____

        [3] The Court recognizes that the State's expert, Cecil Gray, testified at trial that his
26   evaluation of the daily logs led to his opinion that Captain Kjos did violate the 12-hour
     limitation.  However, the Court previously found that Cecil Gray's testimony was directly
     contradicted by his deposition.  FOF 28.  The Court will not re-evaluate that finding.

1  finds that Sea Coast has met its burden of proving by a preponderance of the evidence that

2  Captain Kjos did not violate the 12-hour work limitation in the 24 hours preceding the

3  allision.

4         2.  Privity of Knowledge

5         Because the Court finds that Sea Coast has proved the absence of a 12-hour violation

6  by a preponderance of the evidence, the Court need not determine whether Sea Coast had

7  privity of actual or constructive knowledge.  There can be no knowledge of an event that did

8  not occur.

9         3.  Other Issues on Remand

10        In its brief and argument before the Court, the State suggests that the issues on remand

11 are not limited to questions of whether a 12-hour violation occurred and, if a violation

12 occurred, whether Sea Coast had privity of knowledge of such a violation.  The State

13 contends that this Court should also revisit its conclusion that Sea Coast did not have privity

14 of knowledge of Captain Kjos having fallen asleep on watch.  State's Br. at 19-21.

15 Specifically, the State asks the Court to conclude that Sea Coast's record-keeping procedures

16 and employee surveys placed Sea Coast on notice that fatigue was a problem likely to result

17 in crewmen falling asleep on watch.

18        The Court declines to address this argument for two reasons.  First, the Court

19 previously concluded that Captain Kjos' negligence in falling asleep was the *sole* proximate

20 cause of the allision and that Sea Coast did not have privity of knowledge as to that

21 negligence.  COL 10, 13-15.  The Court also concluded that Sea Coast's misinterpretation of

22 Coast Guard regulations and poor log-keeping practices were not causes of the allision.  COL

23 11.  The Court has resolved the issues the State now seeks to raise.  Second, the Ninth

24 Circuit's Memorandum does not instruct the Court to re-examine these conclusions.  The

25 Memorandum speaks only to the 12-hour violation issue.

26

1

## CONCLUSION

The only direct evidence regarding the 12-hour violation claim was provided by

Captain Kjos, who testified that he did not work more than 12 hours in the 24 hours

preceding the allision of July 29, 2000.  Captain Kjos also testified that he did not work

between 0745 and 0935 on July 28, 2000.  Captain Kjos' testimony was not contradicted by

his deposition, the daily log entries, or Captain Kjos' trial testimony concerning July 24, 25,

and 26.  Based on this evidence, the Court finds that Sea Coast proved the absence of a 12-

hour violation by a preponderance of the evidence.  Therefore, Sea Coast is entitled to limit

its liability subject to the Limitation of Liability Act,  46 U.S.C. app. § 183 (1952 & Supp.

2005).

IT IS SO ORDERED.

DATED this 28th day of February, 2006.

Thomas S. Zilly
United States District Judge

ORDER   -9-